UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MEHMET SALIH GOCERI, et al., | Case No.  23-cv-06069-PCP |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO COMPEL ARBITRATION** |
| AMAZON.COM, INC., | Re: Dkt. Nos. 5, 17 |
| Defendant. | |

Pro se plaintiffs, on behalf of their business (a seller on Amazon's online marketplace), bring this action for breach of contract and fraud against defendant Amazon.com, Inc. Amazon has moved to compel arbitration under the Federal Arbitration Act, arguing that plaintiffs' agreement with Amazon included an agreement to arbitrate any dispute. For the reasons that follow, Amazon's motion to compel arbitration is granted.

## I.  Background

Plaintiffs filed the present action in state court on October 11, 2023. Amazon subsequently removed the case to this Court then moved to compel arbitration.

Amazon's motion is premised upon the contractual agreement governing plaintiffs' business relationship with Amazon. Plaintiffs do not dispute having entered into this agreement; to the contrary, they specifically allege in their complaint that "Amazon entered a contract with [plaintiff's business entity] Spring Design LLC when Spring Design LLC agreed to Amazon's policies and procedures for selling on its online marketplace." Compl. ¶ 3.1; *see also* Opposition, Dkt. NO. 10, at 2 ("Spring Design LLC agreed to Amazon's policies and procedures for selling on its online marketplace."). According to Amazon, plaintiffs registered as Amazon sellers in June 2019

and accepted the March 2019 version of the Amazon Services Business Solutions Agreement then in effect. That agreement included the following provision:

**19. Miscellaneous.**

The Governing Laws will govern this Agreement, without reference to rules governing choice of laws or the Convention on Contracts for the International Sale of Goods. … If the Elected Country is the United States, Canada, or Mexico**, Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in cour**t, except that (i) you may assert claims in a small claims court that is a Governing Court if your claims qualify and (ii) you or we may bring suit in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, to enjoin infringement or other misuse of intellectual property rights. **There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of this Agreement as a court would.** To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to our registered agent…. The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes. Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules. We will reimburse those fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous. Likewise, Amazon will not seek attorneys' fees and costs from you in arbitration unless the arbitrator determines the claims are frivolous. You may choose to have the arbitration conducted by telephone, based on written submissions, or in person at a mutually agreed location. **Amazon and you each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action**. If for any reason a claim proceeds in court rather than in arbitration **Amazon and you each waive any right to a jury trial.**

Dkt. No. 5-3, at 6. Amazon now moves to compel arbitration of plaintiffs' claims on the basis of this provision.

## II.      Legal Standards

The Federal Arbitration Act provides that a "written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As this language makes clear, "an arbitration agreement is a contract like any other." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). And like other contracts, arbitration agreements are subject to "generally applicable contract defenses" like "fraud, duress, or unconscionability." *Lim v. TForce Logs., LLC*, 8 F.4th 992, 999 (9th Cir. 2021). There is one way arbitration provisions in a contract are distinct, however: "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). In other words, notwithstanding state law on severability, an arbitration provision can be valid and enforceable even if other parts of the contract it is in are not.

A purported arbitration agreement presents a few "gateway" issues: First, whether an agreement to arbitrate was actually formed. *See Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634–35 (9th Cir. 2021). Second, whether that agreement is "valid," *Bielski*, 87 F.4th at 1009, in other words, whether there are any defenses. Third, "whether the agreement encompasses the dispute at issue." *Id.*

Normally, these gateway questions are resolved by a court. But parties to an arbitration provision can also enter a separate agreement to arbitrate some of these gateway questions—a "delegation" provision—as long as the parties "*clearly and unmistakably* provide" that the "gateway issues … be expressly delegated to the arbitrator." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (emphasis in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so"). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as

it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). And, like any other arbitration provision, a delegation provision is severable. *See Buckeye*, 546 U.S. at 445. Not all gateway questions can be delegated, however. While "some 'gateway' issues…, such as issues of validity and arbitrability, can be delegated," "parties cannot delegate issues of formation." *Ahlstrom*, 21 F.4th at 634–35.

All of this means that when presented with a contract that includes both an arbitration provision and a delegation provision, a reviewing court can consider three types of challenges: (1) formation challenges to the delegation provision, *see Ahlstrom*, 21 F.4th at 635; (2) validity and enforceability challenges to the delegation provision, *see Bielski*, 87 F.4th at 1009; and (3) formation challenges to the underlying arbitration provision, *see Ahlstrom*, 21 F.4th at 635. But if the delegation provision is valid, the court cannot consider validity or enforceability challenges to the underlying arbitration provision. *See also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) ("First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause. Next, a court must also resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability. Finally, if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide.").

Formation challenges to either a delegation provision or an underlying arbitration provision are decided pursuant to state law. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) ("In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation."). To challenge the validity or enforceability of a delegation provision, "a party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments." *Bielski*, 87 F.4th at 1009. But while challenges must be specific, they need not be unique: A party "may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable." *Id.* at 1009–10.

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

If there is no delegation provision (or if one is successfully challenged), the Court must resolve the gateway questions: whether the arbitration agreement was formed, whether there are defenses or validity challenges to that agreement, and whether that agreement covers the dispute.

If the Court is "satisfied that the making of the agreement for arbitration … is not in issue" it must "make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. The summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). The Court must "give to the opposing party the benefit of all reasonable doubts and inferences." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007).

### III.    Analysis

At the outset, the Court must determine what challenges to Amazon's arbitration agreement are properly before the Court. Amazon argues that its agreement incorporates a delegation provision, such that the Court can only consider issues of contract formation and challenges to the enforceability and validity of that delegation provision.

Amazon's agreement provides, in relevant part, that "arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes." Amazon argues that this provision "expressly incorporates the AAA rules," and that those rules delegate to the arbitrator questions of the arbitration agreement's enforceability and validity. Motion, Dkt. No. 5, at 17; *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1128, 1130 (9th Cir. 2015) (holding that arbitration agreement's incorporation of "the Rules of the American Arbitration Association" "constitute[d] clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability").

Whether the parties' agreement incorporates a delegation clause is a matter of state contract law, so the Court must determine at the outset what state's law governs.[1] Amazon's

---

[1] In *Brennan v. Opus Bank*, the Ninth Circuit concluded, as a matter of federal arbitrability law (which governs whether a particular agreement is sufficiently "clear and unmistakable" in providing that arbitrability issues will be resolved by the arbitrator), that when an agreement expressly incorporates arbitration rules that empower an arbitrator "to rule on his or her own jurisdiction, including with respect to the … validity of the arbitration agreement," that incorporation "constitutes clear and unmistakable evidence that contracting parties agreed to

5

contract provides that for sellers like plaintiffs registered in the United States, the "Governing Laws" are "the laws of the State of Washington … together with the Federal Arbitration Act and other applicable federal law." Dkt. No. 5-3, at 9. Under Washington law, if "parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract." *Washington State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co.*, 176 Wash. 2d 502, 517 (2013).[2] "It must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *W. Washington Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 102 Wash. App. 488, 494–95 (2000). "The party claiming incorporation by reference bears the burden of proving it." *Edifice Constr. Co., Inc. v. Arrow Insulation, Inc.*, 12 Wash. App. 2d 1019 (Wash. Ct. App. 2020).

Amazon's agreement specifies that the arbitration will be conducted by the AAA "under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes." As of the date of this order, the AAA's website (of which the Court takes judicial notice) includes 56 documents on its "Active Rules" page. *See* American Arbitration Association, Active Rules, perma.cc/SXD4-8X58. There are even more entries on the "Archived Rules" page, indicating that the AAA's rules can change over time. *See* American Arbitration Association, Archived Rules, perma.cc/4H4R-6H4C.

In *Woodward v. Emeritus Corp.*, the Washington Court of Appeals concluded that an agreement which provided that arbitration "shall be administered in accordance with the procedures in effect for consumer arbitration adopted by the American Arbitration Association" was sufficiently clear and unequivocal to incorporate the AAA's Consumer Arbitration Rules by

---

[2] arbitrate arbitrability." 796 F.3d at 1128, 1130. But whether the parties' agreement actually incorporates any particular set of rules is an antecedent question related to formation that must be decided by applying state contract law. *See Berman*, 30 F.4th at 855. Only if rules like the AAA rules at issue in *Brennan* are actually incorporated into an agreement can that incorporation demonstrate the parties' clear and unmistakable intent to delegate gateway questions to the arbitrator as required under *AT&T Technologies*, 475 U.S. at 649.

[2] Plaintiffs assert that their business is "subject to California law." Compl. ¶ 1.1. Because California law similarly allows incorporation by reference only where the "reference to the incorporated document" is "clear and unequivocal," *see Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994) (cleaned up), applying California law would lead to the same result.

United States District Court
Northern District of California

reference. 192 Wash. App. 584 ¶ 2, 23. But that agreement referred to one particular set of AAA rules and made clear that the currently effective rules (rather than, say, the version in effect at the time of the agreement) would be the ones that apply. Here, by contrast, Amazon's agreement simply refers to the AAA and "its rules." Given the AAA's many active sets of rules, Amazon's "its rules" reference is much less precise than the one at issue in *Woodward*.[3]

In its briefing to this Court and supporting declarations, Amazon nonetheless argues that its arbitration agreement expressly incorporates a specific set of rules—the AAA's commercial rules. *See, e.g.*, Dkt. 5, at 11 (stating that AAA "will administer the arbitration under its commercial rules"). The actual language of the agreement, however, includes no explicit reference to "commercial" rules. It refers only to the "Supplementary Procedures for Consumer-Related Disputes," which were promulgated effective September 15, 2005 and which do *not* contain a delegation provision. *See* perma.cc/SNX9-5L3V. This reference undermines Amazon's contention that the parties' agreement incorporates the commercial rules (and their delegation provision). Moreover, the AAA's Consumer Arbitration Rules (which took effect September 1, 2014 and were in effect at the time the agreement at issue here was formed) specify that those consumer rules—rather than the commercial rules—will be applicable where the parties "have specified that the Supplementary Procedures for Consumer-Related Disputes shall apply, which have been amended and renamed the Consumer Arbitration Rules." *See* perma.cc/Y9DF-BVGY, at 9. This further undermines Amazon's argument that its agreement with plaintiffs incorporates the commercial rules.

It thus appears that the set of rules referenced in the parties' agreement could be either the Commercial Arbitration Rules (as Amazon contends), the 2005 Supplementary Procedures for

---

[3] In *Brennan*, the parties' agreement specified that disputes "shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association." 796 F.3d at 1128. The district court had concluded that this agreement "expressly incorporat[ed] the AAA arbitration rules," including their delegation provision. *Id.* at 1130. While Brennan challenged on appeal whether that incorporation constituted sufficient evidence of the parties' intent to delegate gateway question to the arbitrator, he apparently did not contest (and the Ninth Circuit did not reconsider) the district court's determination that the parties' agreement incorporated a particular set of AAA rules.

United States District Court
Northern District of California

1    Consumer-Related Disputes (which are specifically referenced in the agreement), or the Consumer

2    Arbitration Rules (which replaced the Supplementary Procedures in 2014). Sorting through which

3    rules will apply in this case is ultimately a problem for the arbitrator. But the uncertainty over

4    which set of rules is referenced in the parties' agreement prevents this Court from concluding that

5    Amazon has satisfied its burden under Washington law to establish the incorporation of a specific

6    set of rules incorporating a delegation provision into the parties' agreement.[4]

7    　　　　Because Amazon has not satisfied its burden under Washington law to prove that the

8    parties' agreement incorporated AAA rules pursuant to which the arbitrator decides arbitrability,

9    the Court must determine whether plaintiffs' claims are subject to the agreement to arbitrate. That

10   agreement covers "any dispute with Amazon or its Affiliates or claim relating in any way to this

11   Agreement or your use of the Services." This broad language clearly covers plaintiffs' claims,

12   which specifically invoke and allege breach of plaintiffs' agreement with Amazon. Although

13   plaintiffs contend that requiring arbitration of their claims would be unjust, the Federal Arbitration

14   Act prohibits the Court from declining to compel arbitration on that basis. Accordingly, Amazon's

15   motion to compel arbitration is granted.

16   　　　　As the Court recently explained in another case:

17   　　　　　　Section 4 of the FAA directs that, in a suit involving claims subject to
             an arbitration agreement, the Court "shall on application ... stay the
18   　　　　　　trial of the action until such arbitration has been had in accordance
             with the terms of the agreement." The Ninth Circuit, however, has
19   　　　　　　carved out an exception to this language, concluding that
             "[n]otwithstanding the language of section three, a district court may
20   　　　　　　either stay the action or dismiss it outright when ... the court
             determines that all of the claims raised in the action are subject to
21   　　　　　　arbitration." *Forrest v. Spizzirri*, 62 F.4th 1201, 1204–05 (9th Cir.
             2023) (cleaned up).... Recently, ... the Supreme Court granted the
22   　　　　　　petition for certiorari in *Forrest* in order to decide whether the FAA
             allows district courts to dismiss a case when all claims are subject to
23   　　　　　　arbitration or whether the suit must be stayed.

24

25

26

27   ─────────────────

28   [4] Perhaps unsurprisingly given this confusion, Amazon has also failed to demonstrate that
     plaintiffs had knowledge of and assented to the purportedly incorporated rules, as required under
     Washington law.

United States District Court
Northern District of California

*Rossi v. Purvis*, No. 23-CV-04148-PCP, —— F. Supp. 3d ——, 2024 WL 319679, at *9–10 (N.D. Cal. Jan. 29, 2024). As in *Rossi*, the circumstances in this case would justify dismissing plaintiffs' complaint outright under the exception discussed in *Forrest*, but given the possibility of a change in this area of the law, the Court will instead stay this case until July 1, 2024. Absent new authority precluding dismissal, this case will be dismissed on that date. If the Supreme Court holds that dismissal is not permissible, the stay will remain in place until arbitration is complete.

**IV.     Conclusion**

For the reasons set forth above, Amazon's motion is granted and this case shall be stayed.

**IT IS SO ORDERED.**

Dated: March 8, 2024

_____

P. Casey Pitts
United States District Judge